# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

BENJAMIN SANTINI,               )
                                  )

Plaintiff,                         )
                                  )

v.                                )        Case No. 3:20-cv-00661
                                  )        Judge Aleta A. Trauger

DAVID RAUSCH, in his official capacity   )
as Director of the Tennessee Bureau of   )
Investigation,                        )
                                  )

Defendant.                       )

## MEMORANDUM

Tennessee Bureau of Investigation ("TBI") Director David Rausch ("Director") has filed a Motion to Dismiss (Doc. No. 28), to which Benjamin Santini has filed a Response (Doc. No. 37), and the Director has filed a Reply (Doc. No. 38.) For the reasons set out herein, the court will grant the motion in part and deny it in part.

## I. BACKGROUND[1]

On March 14, 2014, Santini entered a guilty plea to incest, Tenn. Code § 39-15-302, and statutory rape, Tenn. Code § 39-13-506, in Rutherford County Circuit Court.[2] (Doc. No. 24 ¶ 7.) On the recommendation of the State of Tennessee, he was granted judicial diversion, "a form of

---

[1] Unless otherwise indicated, the facts herein are from Santini's First Amended Complaint (Doc. No. 24) and are accepted as true for the purposes of the Motion to Dismiss.

[2] According to Santini, "[t]hese charges were based on a relationship with a legal (but not biological) sibling who was still a minor." (Doc. No. 24 ¶ 8.) Tennessee's incest statute criminalizes, among other things, "sexual penetration" of or by the defendant's "brother or sister of the whole or half-blood *or by adoption*." Tenn. Code Ann. § 39-15-302(a)(2) (emphasis added). Santini's judicial diversion order indicates that he was the victim's "stepbrother." (Doc. No. 1-1 at 1.) Under Tennessee law, a charge of statutory rape can be based on "unlawful sexual penetration" of a person as young as 13 or as old as 17, depending on the age of the defendant. Tenn. Code Ann. § 39-13-506. According to the transcript of Santini's plea proceeding, his victim was younger than 15 and Santini was more than 4 but fewer than 10 years older than the victim. (Doc. No. 25-2 at 2–3.)

legislative largess available to qualified [Tennessee] defendants who have entered a guilty or nolo contendere plea or have been found guilty of an offense without the entry of a judgment of guilt." *State v. Dycus*, 456 S.W.3d 918, 925 (Tenn. 2015) (quoting *State v. King*, 432 S.W.3d 316, 323 (Tenn. 2014)). When a plaintiff is granted judicial diversion, the court "place[s] the defendant on probation upon such reasonable conditions as it may require without entering a judgment of guilty and with the consent of the qualified defendant." Tenn. Code Ann. § 40-35-313(a)(1)(A). In other words, judicial diversion permits a court to place a consenting defendant on probation while nevertheless formally freezing his case in a sort of limbo between a plea (or finding) of guilt—which has already occurred—and the actual entry of a judgment reflecting that guilt—which has not. "If, during the period of probation, the person does not violate any of the conditions of the probation, then upon expiration of the period, the court shall discharge the person and dismiss the proceedings against the person." Tenn. Code Ann. § 40-35-313(a)(2). That dismissal is "without court adjudication of guilt" and, unless some more specific provision indicates otherwise, "shall not be deemed a conviction for purposes of disqualifications or disabilities imposed by law upon conviction of a crime or for any other purpose." *Id.* If, however, the defendant violates the terms of his probation while on judicial diversion, "the court may enter an adjudication of guilt." *Id.* Although incest is not currently an offense for which judicial diversion is eligible, that was not the case in 2014. *See* 2018 Tenn. Laws Pub. Ch. 951 (H.B. 149) (adding incest to list of diversion-ineligible sexual offenses).

The Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act ("Act"), Tenn. Code Ann. § 40-39-201 *et seq.*, requires individuals "convicted" of certain offenses to be included on the state's sexual offender registry and to comply with a number of (often quite severe) restrictions on their behavior, including restrictions

2

on where they can live, work, or even be present. A detailed list of the most salient requirements of the Act can be found in this court's opinion in *Reid v. Lee*, 476 F. Supp. 3d 684, 689–93 (M.D. Tenn. 2020) (Trauger, J.). The definition of "conviction" used by the Act expressly "include[s] a plea taken in conjunction with [the diversion statute] or its equivalent in any other jurisdiction." Tenn. Code Ann. § 40-39-202(1). While Santini was in judicial diversion for four years, therefore, he was treated as a convicted sexual offender for the purposes of the Act, despite the fact that he had not been formally convicted of the charges. Since 2019, the Act has provided that the TBI shall remove an offender from the registry if "[t]he offender previously entered a term of judicial diversion . . . , prior to May 24, 2019, for the offense for which the person [was] required to register . . . and subsequently successfully complete[d] the term of judicial diversion." Tenn. Code Ann. § 40-39-207(c)(2); *see* 2019 Tenn. Laws Pub. Ch. 502 (H.B. 624).

Santini provided, with his Complaint, a transcript of his plea hearing, which included discussion of Santini's sexual offender registry status. In that hearing, the assistant district attorney general representing the State of Tennessee described the relevant portions of the underlying plea deal as follows:

> The Defendant should be granted deferral on these charges. . . . [H]e will have sex offender treatment and take responsibility for his actions. He will be on the sex offender registry and follow the requirements. And that would be for the period of his diversion if he complies with all conditions and completes it. And that diversion will be for a total of four years. If he loses the diversion, he understands that he will be on the sex offender registry for a lot longer than that.

(Doc. No. 25-2 at 9.) Consistently with those terms, Santini received suspended concurrent sentences of two and four years, he was added to the State of Tennessee's sexual offender registry, which is maintained by TBI, and he began his period of judicial diversion. (Doc. No. 24 ¶ 9.) The written Order granting diversion acknowledges that Santini would be placed on the

3

registry and required to "follow [its] requirements," but it makes no explicit statement regarding the duration of his placement on the registry or the circumstances, if any, in which he could be removed from it. The reference to registration, however, appears as part of the "SPECIAL CONDITIONS" of his probation, and his probation was, on the face of the Order, set to expire after four years. (Doc. No. 25-1 at 1–4.)

Santini apparently complied with the conditions of his probation, and, on March 12, 2018, he was discharged from judicial diversion. (Doc. No. 24 ¶ 10.) "Upon the dismissal of the person [on judicial diversion] and discharge of the proceedings against the person . . . , the person may apply to the court for an order to expunge from all official records . . . all recordation relating to the person's arrest, indictment or information, trial, finding of guilty and dismissal and discharge." Tenn. Code Ann. § 40-35-313(b). A little over a week after Santini was discharged, he filed a "Motion to Dismiss and Expunge" related to the charges. (Doc. No. 24 ¶ 10.) On April 23, 2019, the Circuit Court entered an Order granting expungement and stating that "[i]t is ordered that all PUBLIC RECORDS relating to such offense above referenced be expunged and immediately destroyed upon payment of all costs to [the] clerk." (Doc. No. 25-5 at 1.)

Santini, his probation completed and his record expunged, requested that TBI remove him from the sexual offender registry, as the assistant district attorney general had seemingly promised in the plea hearing. On July 31, 2019, TBI mailed Santini a letter denying his request. (Doc. No. 24 ¶ 12; Doc. No. 25-6.) On March 2, 2020, counsel for Santini again requested that he be removed from the sexual offender registry, explaining, this time, in detail why he believed he was entitled to removal. (Doc. No. 24 ¶ 13.) On April 29, 2020, TBI sent a second letter denying the request. (Doc. No. 25-8.) In the letter, TBI Associate Counsel Rachel Russell

acknowledged that Tenn. Code Ann. § 40-39-207(c)(2) stated that an individual who successfully completed judicial diversion should be removed from the registry, but she claimed that Santini's case was instead governed by the provision now codified at Tenn. Code Ann. § 40-39-207(g)(2), which provides that "[a]n offender required to register under this part shall continue to comply with the registration, verification and tracking requirements for the life of that offender, if that offender . . . [h]as been convicted of a violent sexual offense, as defined in [Tenn. Code Ann.] § 40-39-202." Tenn. Code Ann. § 40-39-207(g)(2). Incest has been defined by the Act as a "violent criminal offense" since before Santini's plea or his underlying alleged actions. *See, e.g.*, Tenn. Code Ann. § 40-39-202(30)(V) (2011).

Russell also wrote, "You . . . briefly mention the expungement order. Just for clarification, your client's offenses are not eligible for expungement. I will refer you to Tenn. Code Ann.§ 40-32-101(a)(l)(D)." That provision states that "the records of a person who successfully completes a . . . judicial diversion program pursuant to § 40-35-313 . . . shall not be expunged pursuant to this section, if the offense for which the person was diverted was a sexual offense as defined by § 40-39-202, or a violent sexual offense as defined by § 40-39-202." Tenn. Code Ann.§ 40-32-101(a)(l)(D). Russell, however, did not cite any basis on which TBI would have the authority to disregard an order of expungement entered by a Tennessee court merely because TBI's attorneys unilaterally concluded that the expungement was in error.

On July 31, 2020, Santini filed a Complaint in this court setting forth claims pursuant to 42 U.S.C. 1983, based on the alleged denial of his federal constitutional rights. (Doc. No. 1.) On December 23, 2020, he filed a First Amended Complaint. He pleads three counts: Count I is for denial of due process related to TBI's refusal to remove him from the registry; Count II is for denial of due process based on the State of Tennessee's alleged breaching of his plea agreement;

5

and Count III is for the unlawful imposition of an ex post facto criminal punishment. (*Id.* ¶ 28.) The Director, who is the only defendant named, now seeks dismissal of all three counts. (Doc. No. 28.)

## II. LEGAL STANDARD

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

## II. ANALYSIS

### A. Ex Post Facto Clause Claim

Article I of the U.S. Constitution has two clauses known as the Ex Post Facto Clauses, one of which applies to the federal government and one to the states. U.S. Const., art I, §§ 9, cl. 3, 10, cl. 1. The reference in this opinion to "the Ex Post Facto Clause" is to the state Clause, U.S. Const., art I, § 10, cl. 1, because it is the one relevant to this case. "Ex post facto law" is "a term of art" that, consistently with its "established meaning at the time of the framing," has been construed to refer to criminal, but not civil, laws that are retroactive in effect. *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 504 (1995) (quoting *Collins v. Youngblood*, 497 U.S. 37, 43 (1990)). *But see Collins*, 497 U.S. at 41 (acknowledging that a literal reading of the language would reach all, not merely criminal, laws). In its most straightforward formulation, the Ex Post Facto Clause dictates that "[l]egislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts." *Collins*, 497 U.S. at 43.

In recent years, U.S. district courts have held in several cases that at least some ex post facto applications of Tennessee's sexual offender registration requirements violate the Ex Post Facto Clause. *See, e.g.*, *Doe #1 v. Lee*, No. 3:16-CV-02862, 2021 WL 428967, at *41 (M.D. Tenn. Feb. 8, 2021) (Richardson, J.); *Jackson v. Rausch*, No. 3:19-CV-377, 2020 WL 7496528, at *4 (E.D. Tenn. Dec. 21, 2020) (Jordan, J.) *Reid*, 476 F. Supp. 3d at 708 (Trauger, J.); *Doe v. Rausch*, 461 F. Supp. 3d 747, 769 (E.D. Tenn. 2020) (Reeves, C.J.); *Doe v. Rausch*, 382 F. Supp. 3d 783, 799–800 (E.D. Tenn. 2019) (Phillips, J.). This court, as it has before, accepts those cases' Ex Post Facto Clause analysis as generally persuasive, both under current Sixth Circuit precedent and under the Supreme Court's established Ex Post Facto Clause jurisprudence. Whether the Ex Post Facto Clause is implicated by any particular case, however, depends on the

circumstances of that case—most importantly, the date of the underlying offense and the state of the law on that date.

The Director argues that, regardless of Santini's other complaints, the application of the Act to him does not implicate the Ex Post Facto Clause, because Tennessee, in its handling of his case, has only applied the law as it existed when Santini committed his alleged crimes. It is undisputed that, after Santini's offense but before the end of his probation, there was, in fact, an intervening change in the law governing judicial diversion for incest—namely, that Tenn. Code Ann. § 40-35-313(a)(1)(B)(ii) was amended to add incest to the list of offenses for which judicial diversion is not available. The Director, however, argues that that change was not actually responsible for TBI's decision not to remove Santini from the registry. Rather, the Director argues, Tenn. Code Ann. § 40-39-207(g)(2) already mandated that all individuals "convicted" of violent sexual offenses, as that term is used in the Act, must register for life, regardless of the fact that, since at least 2019, successfully completed judicial diversion would otherwise entitle the offender to be removed from the registry pursuant to Tenn. Code Ann. § 40-39-207(c)(2). By the Director's reading, Tenn. Code Ann. § 40-39-207(c)(2) only applies to individuals who committed sexual offenses not defined by the Act as violent.

The Director's interpretation of the law does appear to be an accurate explanation for TBI's decisions, as they were presented to Santini. It does not appear that TBI, at any point, disputed the fact that Santini did, in fact, receive judicial diversion, regardless of whether that diversion would now be statutorily permissible. This court, moreover, highly doubts that TBI would even have the authority to disregard a plain and unambiguous action of a court, such as a grant of judicial diversion, simply because TBI disagreed with the legal foundations of the court's decision. Certainly, traditional separation of powers principles would not look favorably

8

on the prospect of an executive agency simply disregarding a judicial determination that has never been set aside on appeal or through a valid collateral challenge. In any event, that does not appear to be what TBI did here, at least with regard to whether Santini received judicial diversion. Rather, TBI appears to have simply read existing statutes to require Santini's lifetime registration, *despite* his having received judicial diversion.

As Santini points out, TBI's reading of the Act is not the only possible interpretation of the relevant provisions. As written, the terms of the Act seem, at least at first glance, to be flatly contradictory. Tenn. Code Ann. § 40-39-207(g)(2) mandates that "[a]n offender required to register under this part shall continue to comply with the registration, verification and tracking requirements for the life of that offender, if that offender . . . [h]as been convicted of a violent sexual offense, as defined in [Tenn. Code Ann.] § 40-39-202." Tenn. Code Ann. § 40-39-207(g)(2). Tenn. Code Ann. § 40-39-202 defines judicial diversion to be a "conviction" under the Act, even though it does not entail the entry of a judgment of guilt, meaning that an individual who receives judicial diversion for a violent sexual offense is "convicted" for the purposes of the Tenn. Code Ann. § 40-39-207(g)(2) lifetime registration requirement. Yet, Tenn. Code Ann. § 40-39-207(c) requires TBI to "remove an offender's name from the [sexual offender registry]," if the individual "entered a term of judicial diversion, pursuant to § 40-35-313, prior to May 24, 2019, for the offense for which the person is required to register under this part and subsequently successfully completes the term of judicial diversion"—with no mention of the possibility that that provision would not apply to the few diversion-eligible violent sexual offenses, of which incest was, originally, one. *Compare* Tenn. Code Ann. § 40-35-313(a)(1)(B)(ii) (listing diversion-ineligible sexual offenses) *with* Tenn. Code Ann. § 40-39-202(31) (listing violent sexual offenses). In a case such as Santini's, these commands are

9

irreconcilable—TBI cannot simultaneously comply with Tenn. Code Ann. § 40-39-207(g)(2)

without violating Tenn. Code Ann. § 40-39-207(c), and vice versa. One of those provisions,

therefore, must create an exception to the other. Either there is an exception to Tenn. Code Ann.

§ 40-39-207(g)(2)'s lifetime registration requirement for individuals who entered into judicial

diversion prior to May 25, 2019 and successfully completed its terms, or there is an exception to

Tenn. Code Ann. § 40-39-207(c)'s right to be removed from the registry after completing

diversion for individuals whose offenses are on the list of sexual offenses deemed by the State of

Tennessee to be "violent."

As vexing as that statutory problem may be, it does not present an Ex Post Facto Clause

issue, for one simple reason: the version of Tenn. Code Ann. § 40-39-207(c) entitling individuals

who completed judicial diversion to removal from the registry—that is, the very benefit of which

Santini was allegedly deprived—did not exist when Santini committed his offense. It was added

in 2019.[3] *See* 2019 Tenn. Laws Pub. Ch. 502 (H.B. 624). The purpose of the Ex Post Facto

Clause is to ensure "that legislative Acts give fair warning of their effect and permit individuals

to rely on their meaning until explicitly changed." *Weaver v. Graham*, 450 U.S. 24, 28–29

(1981) (citing *Dobbert v. Florida*, 432 U.S. 282, 298 (1977); *Kring v. Missouri*, 107 U.S. 221,

229 (1883); *Calder v. Bull*, 3 U.S. 386, 387 (1798)). If Tenn. Code Ann. § 40-39-207(c)(2) did

not exist, in its relevant form, when Santini committed his alleged crimes, then there is no issue

of whether the state gave him adequate warning that the provision would not apply to him.

---

[3] The Director notes that the relevant version of Tenn. Code Ann. § 40-39-207(c)(2) was enacted after incest had been added to the list of diversion-ineligible offenses, meaning that the General Assembly may not have expected that individuals who committed incest would benefit from the right to post-diversion removal from the registry. Even if that is true, though, it is ultimately beside the point, because Santini did receive judicial diversion, for which he was eligible at the time it was granted, and the adjudication of his judicial diversion plea has never been set aside.

10

Santini continues to assert that Tennessee impermissibly applied Tenn. Code Ann. § 40-35-313(a)(1)(B)(ii), which adds incest to the list of non-divertible offenses, to him. But that statute was never applied to him at all, impermissibly or otherwise. Santini *did* receive judicial diversion. The charges against him *were* dismissed without the entry of a judgment of guilt. The Director, for his part, does not rely on Tenn. Code Ann. § 40-35-313(a)(1)(B)(ii) to justify Santini's lifetime registration obligation, nor could he. When it comes to Tenn. Code Ann. § 40-35-313(a)(1)(B)(ii), the State of Tennessee honored any obligation it had under the Ex Post Facto Clause by not reaching back and taking Santini's judicial diversion plea away. Any Ex Post Facto Clause claim on behalf of Santini must be based on the provisions that were actually applied to him.

The question of whether Santini has plausibly pleaded a § 1983 claim based on his rights under the Ex Post Facto Clause is, of course, distinct from the question of whether the Director has actually correctly applied Tennessee law. Santini has presented a colorable argument that the Director did err in his interpretation of the Act when he concluded that the lifetime registration requirement overrides the right to removal from the registry after successfully completing judicial diversion. Whether the Director erred in that way or did not, however, is a question of Tennessee statutory law that does not implicate the Ex Post Facto Clause. The court, therefore, will dismiss Count III.

## B. Claim Based on Alleged Breach of Plea Agreement

As the basis for Count II, Santini alleges that his "plea agreement created quasi-contractual rights, as well as procedural and substantive due process rights pursuant to the Fourteenth Amendment to the United States Constitution," which the Director violated by failing to remove him from the registry. (Doc. No. 24 ¶ 28.b.) The Director responds that any such claim

11

(1) is untimely, (2) is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and (3) should, if not otherwise barred, be dismissed on the merits.

### 1. Timeliness

The statute of limitations for a § 1983 action is the "state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). The limitations period for § 1983 actions arising in Tennessee is the one-year limitations provision found in Tenn. Code Ann. § 28-3-104(a). *Porter v. Brown*, 289 F. App'x 114, 116 (6th Cir. 2008). "[T]he accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Claims accrue and the statute of limitations period begins to run when the plaintiff knows or has reason "to know of the injury which is the basis of his action." *Roberson v. Tenn.*, 399 F.3d 792, 794 (6th Cir. 2005). This inquiry is objective, and courts look "to what event should have alerted the typical layperson to protect his or her rights." *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 548 (6th Cir. 2000). It is the court's responsibility to "determine whether the alleged precipitating event or events occurred more than a year before [the plaintiff] filed the complaint." *Standridge v. Tenn. Dep't of Children's Servs.*, No. 3:08–CV–133, 2009 WL 348782, at *7 (E.D. Tenn. Feb. 10, 2009).

The Director argues that this court should construe Count II as, in effect, a challenge to the terms and/or circumstances of Santini's plea and conclude that Santini's claim accrued in 2014, when the plea was entered. The Director argues that the terms with which Santini has been required to comply are simply the statutory consequences of his plea, as of the time it was entered, and that Santini's ultimate grievance is not with any recent action, but with the way that

12

the assistant district attorney general, acting on behalf of the state, represented the terms of the plea and the state of the law to Santini at the time.

Santini, however, is "the master of [his] complaint," *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99 (1987)), and he has chosen to allege that his rights were violated by the TBI's decision, not the plea proceedings. Santini argues that the State of Tennessee, acting through the assistant district attorney general, entered into a binding plea with Santini, and that, a few years later, another representative of the State of Tennessee, the Director, violated the terms of that agreement. Whatever the merits of such a challenge, it plainly did not accrue until an alleged breach actually occurred. Santini, moreover, could not have known that TBI would refuse to remove him until TBI, provided with documentation supporting removal, denied his request.

Under Tennessee law governing the calculation of statutes of limitations, "the date of the act, event or default after which the designated period of time begins to run is *not* to be included," and "[t]he last day of the period so computed *shall* be included." Tenn. R. Civ. P. 6.01 (emphasis added); *see also* Fed. R. Civ. P 6(a)(1)(A), (C) (setting forth same rule). In other words, if a claim subject to a one-year statute of limitations accrued on, for example, January 2 of a year, then the plaintiff would have a one-year period, from January 3 of that year through and including January 2 of the next year, to file his claims. *See Smith v. Hose*, No. 03A01-9501-CV-0006, 1995 WL 371675, at *1 (Tenn. Ct. App. June 21, 1995) (providing example of how to calculate end date of one-year statute of limitations). Santini's First Amended Complaint does not state specifically when he received TBI's first denial letter. According to that Complaint, however, TBI "mailed" the letter on July 31, 2019 (Doc. No. 24 ¶ 12), meaning that, by the ordinary meaning of the word "mailed," Santini would have been very unlikely to receive the

13

letter until Thursday, August 1, 2019, at the earliest. Of course, modern agencies and individuals sometimes simultaneously send letters through the mail and through e-mail, which allows effectively instantaneous transmission,[4] and the stated date on a letter is not always accurate. At this stage, there is no record to definitively resolve when Santini received the denial. On the face of the Complaint, however, it appears that the one-year statute of limitations likely began to run no earlier than August 2, 2019—the day after the earliest plausible receipt of the letter—and therefore concluded on and included August 1, 2020. The Complaint was filed on July 31, 2020, within that limitations period.

As many courts have observed, "[s]tatute-of-limitations defenses are," at least typically, more "properly raised in Rule 56 motions [for summary judgment], rather than Rule 12(b)(6) . . . motions, because '[a] plaintiff generally need not plead the lack of affirmative defenses to state a valid claim.'" *Munson Hardisty, LLC v. Legacy Pointe Apartments, LLC*, 359 F. Supp. 3d 546, 567 (E.D. Tenn. 2019) (quoting *Paulin v. Kroger Ltd. P'ship I*, No. 3:14-cv-669, 2015 WL 1298583, at *4 (W.D. Ky. Mar. 23, 2015)); *see also Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). Only if it is "'apparent from the face of the complaint that the time limit for bringing the claim[s] has passed'" does the plaintiff have an "obligation to plead facts in avoidance of the statute of limitations defense." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008) (quoting *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 744 (6th Cir. 1992)). The court, accordingly, need not definitively resolve the statute of limitations issue now. It is not apparent, from the face of Santini's First Amended Complaint, that his claim accrued

---

[4] The court notes, though, that the letter itself bears only a physical address and no e-mail address. (Doc. No. 25-7.)

more than one year before he filed suit.[5] The court, accordingly, will not dismiss Count II on that ground.

## 2. *Heck v. Humphrey*

Individuals who seek to rely on § 1983 to challenge the details of their criminal pleas frequently run afoul of *Heck v. Humphrey,* in which the Supreme Court held that,

> in order to recover . . . for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

512 U.S. at 486–87 (footnote omitted). "*Heck* applies whether the plaintiff seeks injunctive or monetary relief." *Ibrahim v. U.S. Parole Bd. Members*, 80 F. App'x 421, 422 (6th Cir. 2003) (citing *Heck,* 512 U.S. at 487; *Edwards v. Balisok*, 520 U.S. 641, 645 (1997)). The Director argues that Santini's argument is, as a practical matter, a challenge to his plea agreement and is, therefore, barred by *Heck*.

The Director's argument in this regard arguably suffers from the same misapprehension that was fatal, at least at this stage, to his defense based on the statute of limitations. Santini, by his own characterization, is not challenging the terms of his plea agreement, but, rather, the Director's 2019 decision to deny Santini's registry removal request. The Director has repeatedly insisted to this court, including in this case, that the sexual offender registry is not a mechanism of criminal punishment, but rather a civil administrative system directed at ongoing issues of public safety. However one assesses the persuasiveness of that argument for Ex Post Facto Clause purposes, the Director's position does highlight an important point: that the actions taken

---

[5] For the same reason, the court will not, at this stage, address the argument that the Director's ongoing application of the Act to Santini constitutes a "continuing violation" of his rights, for statute of limitations purposes.

15

by the Director, in his administration of the registry, are distinct from any underlying criminal conviction. A person can challenge the Director's actions without necessarily implicating the original criminal proceedings.

Indeed, in this case, there was not even an actual underlying criminal conviction in the first place, as opposed to a "conviction" for the purposes of the Act, making it questionable whether *Heck* is even implicated in this case. *See S.E. v. Grant Cty. Bd. of Educ.*, 544 F.3d 633, 639 (6th Cir. 2008) (holding that *Heck* did not bar § 1983 claim where "the plaintiff was neither convicted nor sentenced and was habeas-ineligible"); *Butts v. City of Bowling Green*, 374 F. Supp. 2d 532, 537 (W.D. Ky. 2005) (holding pretrial diversion under Kentucky law is not a criminal conviction for purposes of *Heck*), *cited in White v. Wilson*, No. 1:18-CV-00093, 2019 WL 4276993, at *6 n.5 (M.D. Tenn. Sept. 10, 2019) (Campbell, J.) (noting that "the defendants . . . initially argued Plaintiffs' claims are barred by *Heck* . . . , but withdrew that argument in their Reply brief based on the pretrial diversion issue"); *but see Hall v. Thompson*, No. CV 05-155-GFVT, 2006 WL 8445401, at *7 (E.D. Ky. Sept. 29, 2006) ("A majority of the courts squarely considering the issue have determined that entry into a diversion program is an 'unfavorable termination of the criminal charge' pursuant to *Heck*") (collecting cases). Even if Santini did characterize his claim as a challenge to the terms of his plea agreement, as opposed to a challenge based on the later breach of those terms, that claim would seem to fall outside the ordinary boundaries of the *Heck* bar, as it is usually defined, because it does not challenge either a "conviction" or a "sentence." The Director nevertheless argues that *Heck* applies, because Santini pleaded guilty and was placed on the registry as a result, and *Heck* should reach such a situation, even if there was technically no "conviction" for ordinary purposes.

16

"Pretrial diversion programs were not specifically considered by the Supreme Court in *Hall*, 2006 WL 8445401, at \*7. That said, "the Supreme Court has," at least generally speaking, "foreclosed application of *Heck* in circumstances that do not involve an extant criminal conviction." *Printup v. Dir., Ohio Dep't of Job and Fam. Servs.*, 654 F. App'x 781, 791 (6th Cir. 2016) (citing *Wallace v. Kato*, 549 U.S. 384, 393 (2007)); *accord Thomas v. Plummer*, 489 F. App'x 116, 122 (6th Cir. 2012) ("Here, there is no state conviction to impugn. *Heck* is inapposite."). An individual who enters into a judicial diversion plea may end up with a criminal conviction or he may not, depending on whether he complies with his probation. Santini, for his part, complied and, accordingly, there is no conviction. The court notes, moreover, that courts have typically recognized that *Heck* does not bar suits that implicate expunged convictions, *see S.E.*, 544 F.3d at 637 (stating that *Heck* does not apply if "the conviction or sentence has been reversed, expunged, or invalidated"), and Santini's charges were, in fact, expunged.[6] While there may be an open question regarding how *Heck* should apply to judicial diversion pleas as a general matter, this case raises the narrower question of whether *Heck* applies when (1) the defendant entered into a plea that, as is the case with judicial diversion in Tennessee, formally included the court's forbearance from entering any judgment of guilt; (2) the defendant favorably completed the associated probation and obtained a dismissal of the charges without adjudication of guilt; (3) the court expunged the original charges; and (4) the defendant later sued an officer of the state for an administrative action based on the occurrence of the original plea. The Director identifies no reason why *Heck* should apply in such a situation, given that the defendant was, as a matter of law, never actually convicted of anything, the charges against him were not only dismissed but expunged, and the action he challenges is a later

---

[6] Admittedly, TBI took the position, in its correspondence, that Santini was not entitled to expungement. But the State of Tennessee did not appeal that expungement, and TBI has no more power to unilaterally disregard the ruling of a court that it disagrees with than anyone else.

action by the State of Tennessee that the Director himself insists is civil and not part of Santini's punishment.

As a matter of Tennessee law, the dismissal of Santini's charges was "without court adjudication of guilt," and the disposition of his case is not to be "deemed a conviction for purposes of disqualifications or disabilities imposed by law upon conviction of a crime or for any other purpose." Tenn. Code Ann. § 40-35-313(a)(2). In other words, it is Tennessee law—not merely this court—that determines that Santini simply was not convicted of a crime in the underlying proceedings. Applying *Heck* to such a situation would, in effect, be disregarding both the will of the Tennessee General Assembly and an adjudication of a duly constituted Tennessee state court. This court cannot see how such an action could be squared with the principles of comity and federalism that underlie *Heck* in the first place.

"A trial court may not impose judicial diversion except with the defendant's consent." *State v. Norris*, 47 S.W.3d 457, 463 (Tenn. Crim. App. 2000). Without that consent, it would be impermissible to place the defendant—who has not been convicted of any crime or even adjudicated to be civilly responsible for the underlying acts—on probation or, likely, on the sexual offender registry. Santini gave his consent to judicial diversion, he alleges, based on the promise that the State would eventually remove him from the registry if he complied with the terms of his probation. It is the eventual violation of that agreement that Santini challenges, not any conviction. Nor does Santini challenge any "sentence," because, as the Director has repeatedly reminded the court, a registry obligation is not intended to be, or recognized by Tennessee law as, a criminal sentence. *See* Tenn. Code Ann. § 40-39-201(6), (8) (asserting non-punitive intent of the Act). The court therefore finds no bar based on *Heck*.

3. Merits

18

The court, accordingly, turns to the merits of Count II. Well-settled principles of due process require that, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *United States v. Carter*, 814 F. App'x 1000, 1007 (6th Cir. 2020) (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971)); *accord United States v. Ligon*, 937 F.3d 714, 718 (6th Cir. 2019); *see United States v. Randolph*, 230 F.3d 243, 249 (6th Cir. 2000) (observing that that rule is "derived from the constitutional guarantee of due process"). "Because a defendant obtains a plea agreement only at the expense of his constitutional rights, 'prosecutors are held to meticulous standards of performance'" in how they secure the defendant's waiver. *United States v. Moncivais*, 492 F.3d 652, 662 (6th Cir. 2007) (quoting *United States v. Vaval*, 404 F.3d 144, 152–53 (2d Cir. 2005)). Indeed, Tennessee courts have recently applied that very rule in a defendant's favor in a case very similar, in the relevant respects, to this one. In *Foley v. State*, No. M2018-01963-CCA-R3-PC, 2020 WL 957660 (Tenn. Crim. App. Feb. 27, 2020), the Tennessee Court of Criminal Appeals vacated a plea made in reliance on the government's false assurance that the defendant could avoid the sexual offender registry. *See id.* at *7. Santini's allegations, therefore, plainly state a plausible violation of due process associated with his plea under well-established caselaw.

The fact that Santini's plea did not result in a conviction, if anything, strengthens his argument, because, without a formal conviction, only Santini's consent exists to authorize the government's actions. A judicial diversion plea represents a "*quid pro quo*" between the defendant and the government; the defendant gives up his chance to pursue an outright acquittal and puts himself at risk of summary conviction if he violates the terms of his agreed-to probation, and, in exchange, he receives "a self-determined chance to emerge from the process

19

without a conviction on his or her record." *Norris*, 47 S.W.3d at 463. It is pursuant to that arrangement, not any actual criminal conviction, that Santini was placed on the registry. In other words, Santini, unlike, presumably, the great majority of individuals on Tennessee's sexual offender registry, is on the registry solely because he agreed to be, with no underlying criminal judgment mandating his inclusion. But the transcript of his plea proceeding is unambiguous: Santini did not agree to be placed on the sexual offender registry for anything close to life unless he failed to comply with his probation. Quite to the contrary, the State of Tennessee explicitly stated that he would *not* be required to register for life if he complied. Yet he complied, and Tennessee is attempting to force him to register for life anyway. Even if existing caselaw did not prohibit such a course of action—which it does—the manifest unfairness of the state's actions would plainly raise serious due process issues. The only question remaining, then, is whether the Director's decision to require lifetime registration—which the Director alleges was merely the result of his faithful application of the Act—plausibly constituted a distinct, actionable due process violation *by the Director*, for which Santini may bring a claim pursuant to § 1983.

The Director argues, first, that it would be improper to hold TBI to an agreement made between Santini and an assistant district attorney general who did not represent TBI itself and who had no supervisory authority over the Director. Santini's deal, however, was not with the assistant district attorney general; it was with the State of Tennessee, which that assistant district attorney general represented. *See* Tenn. Code Ann. § 40-3-104 ("All criminal actions are prosecuted in the name of the state of Tennessee against the party charged with the offense."). TBI, of course, is a wholly subsidiary agency of the State of Tennessee, created by the State of Tennessee and exercising only the powers granted to it by the State of Tennessee, on behalf of

the State of Tennessee. *See* Tenn. Code Ann. § 38-6-101 (creating TBI). The Director's actions are Tennessee's actions, and they may violate Tennessee's responsibilities.

Nevertheless, Santini did have an obligation to name an appropriate defendant for his claims, not merely pick *some* state official; the court accordingly must consider whether suing the Director was proper. Typically, where a plaintiff challenges the constitutionality of the state's actions toward him, he may sue any "officer[] of the state . . . clothed with some duty in regard to the enforcement of the laws of the state, and who threaten[s] and [is] about to commence proceedings, either of a civil or criminal nature, to enforce" the challenged action. *Ex parte Young*, 209 U.S. 123, 155–56 (1908). The law of this circuit is clear that, in doing so, the defendant may sue an official who was not himself initially responsible for the unlawful policy and who is, instead, merely enforcing the illegal mandates that he has been charged with enforcing. *See Durham v. Martin*, 905 F.3d 432, 435 (6th Cir. 2018). The Director squarely fits those requirements; TBI administers the Act, and it continues to carry out civil proceedings premised on the assumption that Santini is required to register, despite his contention that he did not consent to that requirement and has never been actually convicted of a qualifying offense.

Arguably, the federal caselaw regarding broken plea agreements might pose an additional obstacle because it, specifically, might not recognize the Director as a sufficient defendant. The Supreme Court has held that, where the government violated the terms of a state plea agreement, "the 'ultimate relief to which petitioner is entitled' must be left 'to the discretion of the state court, which is in a better position to decide whether the circumstances of this case require . . . that there be specific performance of the agreement on the plea' or, alternatively, that 'the circumstances require granting . . . the opportunity to withdraw his plea of guilty.'" *Kernan v. Cuero*, 138 S. Ct. 4, 8 (2017) (per curiam) (quoting *Santobello*, 404 U.S. at 262–63). One could

argue, therefore, that suing the Director in this situation was improper because the Director can only provide one requested remedy—specific performance—and Santini should not be permitted to bypass the state court's authority to determine which of the two typical remedies is appropriate in light of the facts of this case. That argument might be persuasive in a case involving an actual criminal conviction (although, of course, such a claim might also be barred by *Heck*). In this case, however, there is no guilty plea for Santini to withdraw, because the criminal case against him was dismissed without a judgment being recorded. Charges dismissed following judicial diversion and successful completion of probation are dismissed "with prejudice." *City of Memphis v. Morris*, No. W2011-02519-COA-R3CV, 2012 WL 4040693, at *13 (Tenn. Ct. App. Sept. 14, 2012). Santini's record, moreover, has been expunged, meaning that, for the purposes of Tennessee law, the case against him does not presently even exist. The only meaningful legal vestige of the criminal case against him that remains is his registry status. The only remedy available to him, therefore, is specific performance by the TBI—precisely the remedy that the Director can provide.

There is no doubt that this is an odd situation. It looks a great deal like a collateral challenge to a conviction; it may even feel, to some of those involved, like a collateral challenge to a conviction; and, of course, the Act even uses the term "conviction" when describing Santini's plea. But neither look nor feel nor an idiosyncratic statutory definition can change the fact that Santini was never actually convicted of the sexual offenses with which he was charged and for which he is being required to register. Rather, he consented to a limited waiver of some of his rights based on a particular understanding he reached with a representative of the state, and he now alleges that the Director is, in effect, breaking the terms of that deal by exercising the state's authority far in excess of the waiver Santini granted, in violation of well-settled federal

22

principles of due process. The Director has not provided any reason why such a situation, despite its unusual details, should not fall within the ordinary scope of § 1983. The court therefore will not dismiss Count II.

## C. Due Process Claim

Count I alleges that the Director's "failure to comply with the statutory mandate to remove Mr. Santini from the SOR constitutes a denial of Mr. Santini's right to procedural and substantive due process under the Fourteenth Amendment to the United States Constitution." (Doc. No. 24 ¶ 38.a.) It is not altogether clear to this court what Santini means by that allegation, other than that he is reiterating his argument that he is, as a matter of Tennessee statute, entitled to removal from the registry pursuant to Tenn. Code Ann. § 40-39-207(c). The court, therefore, will examine that argument to determine whether it states a plausible claim for relief under the federal courts' caselaw regarding what are typically referred to as "procedural" and "substantive" due process claims under § 1983.

### 1. Procedural Due Process

"The Fourteenth Amendment of the United States Constitution protects individuals from the deprivation 'of life, liberty, or property, without due process of law.'" *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) (quoting U.S. Const. amend. XIV, § 1). That language has been construed to "require[] that the government provide a 'fair procedure' when depriving someone of life, liberty, or property." *Id.* (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992); citing *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992)). Based on that formulation, a "procedural due process" claim depends on the existence of a constitutionally cognizable liberty or property interest with which the state has interfered. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Pusey v. City of Youngstown*, 11 F.3d

652, 656 (6th Cir. 1993). A plaintiff can prevail if he demonstrates either that he was deprived of that liberty or property interest as a result of an "established state procedure" that itself violates procedural due process rights or that he was deprived of a liberty or property interest "pursuant to a random and unauthorized act," and available state remedies would not adequately compensate him for the loss. *Wedgewood Ltd. P'ship I v. Twp. of Liberty, Ohio*, 610 F.3d 340, 349–50 (6th Cir. 2010).

The Director argues that Santini has no constitutionally protected liberty or property interest relevant to this case. The Sixth Circuit recently recognized, however, that, under Michigan's similar sexual offender registration system, "wrongful classification as a sex offender implicates a constitutionally protected liberty interest under the" so-called "stigma-plus test" for constitutional injuries arising out of government actions that harm an individual's reputation while also imposing some additional hardship. *Hart v. Hillsdale Cty., Mich.*, 973 F.3d 627, 644 (6th Cir. 2020) (citing *Schepers v. Comm'r*, 691 F.3d 909, 914 (7th Cir. 2012); *Brown v. Montoya*, 662 F.3d 1152, 1169 (10th Cir. 2011); *Burgos Vega v. Lantz*, 596 F.3d 77, 81–82 (2d Cir. 2010)). As many courts have noted, the Act imposes numerous, substantial restrictions on an individual's liberty, and, in the view of this court, those restrictions may be so great that the "plus" in "stigma-plus" may, in this instance, be enough to establish a liberty interest, in and of itself, regardless of the stigma. In any event, however, the law of this circuit is that an individual's right not to be included on a sexual offender registry such as Tennessee's—which is very similar to Michigan's, *see Reid*, 476 F. Supp. 3d at 706—is sufficient to trigger a right to due process. Because Santini has alleged a colorable claim that he is entitled to removal from the registry, he has plausibly pleaded that some process was due.

24

"[T]o make out a procedural due process claim," however, the plaintiff "must . . . identify some procedural flaw" in the state's mechanisms for reviewing the deprivation at issue. *Id.* at 645 (citing *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 7 (2003); *Mich. Dep't of State Police*, 490 F.3d at 502). The First Amended Complaint is mostly silent regarding the procedures for requesting removal from the registry, and it does not assert any particular procedural defect— such as a denial of a hearing or of judicial review—that might give rise to a claim under the rubric of procedural due process. That does not necessarily mean that TBI's procedures, in this regard, do, in fact, comply with the Constitution, although the court does note that "[a]n offender whose request for termination of registration requirements is denied by a TBI official may petition the chancery court of Davidson County or the chancery court of the county where the offender resides, if the county is in Tennessee, for review of the decision." Tenn. Code Ann. § 40-39-207(g)(1). All the court can do, at this stage, is evaluate the claims as Santini has pleaded them, and he has not pleaded a plausible claim on the basis of inadequate procedures.

### 2. Substantive Due Process

In addition to the procedural protections afforded to ordinary liberty and property interests, the Due Process Clause "'forbids the government to infringe 'fundamental' liberty interests . . . , no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest.'" *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (quoting *Reno v. Flores*, 507 U.S. 292, 302 (1993)). This guarantee, which touches on an array of subject matters, *see Bell v. Wolfish*, 441 U.S. 520, 534 (1979) (collecting cases), is often discussed as involving "substantive due process"—the principle that some "fundamental rights and liberties" are recognized by the constitutional due process guarantee as so in need of protection that no procedure, alone, can be adequate to guard against their deprivation, unless the

25

substantive basis for the deprivation is itself sufficiently precise and directed toward a sufficiently important purpose. *Glucksberg*, 521 U.S. at 721. Restraints on physical liberty can, at least in some situations, implicate the guarantees of substantive due process. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 749 (1987).

It may be useful to outline, as a preliminary matter, what Santini's substantive due process claim under Count I *does not* entail. This claim is not about the fact that his case may have been affected by intervening changes in the law; those issues are covered by Count III. Nor is this claim about the fact that, when Santini pleaded guilty, the State of Tennessee assured him that he would have a path to removal from the registry; that issue is covered by Count II. The "substantive due process" portion of Count I, as Santini has defined it, comes down to a single, substantive disagreement about Tennessee law: Santini argues that he was entitled to removal from the registry pursuant to Tenn. Code Ann. § 40-39-207(c), but the Director disagrees and plans to keep Santini on the registry for the rest of Santini's life.

As the court has stated, Santini's state-law statutory argument is not baseless. Indeed, the Tennessee Supreme Court—which possesses the ultimate judicial authority to construe the Act, *see In re Fair Fin. Co.*, 834 F.3d 651, 671 (6th Cir. 2016)—might even agree with Santini and disagree with the Director. Section 1983, however, only creates a cause of action if an individual was subject to a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. As such, "[i]n order to seek redress through § 1983, . . . a plaintiff must assert the violation of a federal right . . . ." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (emphasis omitted) (citing *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 106 (1989)). Santini's rights under Tenn. Code Ann. § 40-39-207(c), however, are secured by the laws of Tennessee. Certainly, there are federal rights at issue in the underlying

26

situation, as the court has discussed. But those rights involve, for example, Santini's right to an adequate procedure for raising his argument that he should be removed from the registry or his right not to be misled into waiving his preexisting constitutional protections. The actual, substantive right to removal from the registry that Santini has pleaded with regard to Count I, however, is created by Tenn. Code Ann. § 40-39-207(c)—if that right exists at all—and 42 U.S.C. § 1983 is not an appropriate mechanism for enforcing such a right.

The Director raises various arguments for why the Act's lifetime application to individuals who entered judicial diversion pleas for incest would survive substantive due process review. Santini's First Amended Complaint, however, does not allege that such an application would be unconstitutional, if authorized by Tennessee law and not otherwise tainted by, for example, a plea premised on an explicit promise that the Act would not apply in such a manner. Santini's argument, rather, is that the Director has violated the Constitution by misapplying state law. Because such a claim is not, in this instance, cognizable under § 1983, the court will dismiss Count I, without prejudice to any future consideration of the underlying state-court issue by a court of competent jurisdiction.

## V. CONCLUSION

For the foregoing reasons, the Director's Motion to Dismiss (Doc. No. 28) will be granted in part and denied in part, and Counts I and III will be dismissed.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge

27