# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **BENJAMIN SANTINI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:20-cv-00661** |
| | ) | **Judge Aleta A. Trauger** |
| **DAVID RAUSCH, in his official capacity** | ) | |
| **as Director of the Tennessee Bureau of** | ) | |
| **Investigation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Benjamin Santini has filed a Motion for Summary Judgment (Doc. No. 45), to which Tennessee Bureau of Investigation ("TBI") Director David Rausch ("Director") has filed a Response (Doc. No. 52). The Director has filed a Motion for Summary Judgment (Doc. No. 48), to which Santini has filed a Response (Doc. No. 53), and the Director has filed a Reply (Doc. No. 55). For the reasons set out herein, Santini's motion will be granted, and the Director's motion will be denied.

## I. BACKGROUND

TBI maintains a registry of individuals whom the state has classified as "sexual offenders" or "violent sexual offenders" under the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act ("Act"), Tenn. Code Ann. § 40-39-201 *et seq.*, Tenn. Code Ann. § 40-39-202(20). Inclusion on the registry subjects the registrant, by statute, to a "byzantine code governing in minute detail" numerous aspects of his life, including where he can live or work and how he can parent. *Does #1-5 v. Snyder*, 834 F.3d 696, 697 (6th Cir. 2016) (describing similar Michigan scheme); *see Reid v. Lee*, 476 F. Supp. 3d 684, 689–93 (M.D. Tenn.

2020) (Trauger, J.) (listing key restrictions and requirements). Someone who is classified as a "sexual offender," but not a "violent sexual offender," has the chance to get off the registry after ten years if he complies with the law (and if his victim was not under the age of thirteen), but an individual classified as a "violent sexual offender" must remain on the registry for life. Tenn. Code Ann. § 40-39-207(g)(2)(B).

Typically, a person on the registry was placed there because he was adjudicated guilty of a sexual offense, such as serial indecent exposure or rape.[1] *See* Tenn. Code Ann. § 40-39-202(20)(A)(vii), (31)(B). It is possible, though, for an alleged offender to end up on the registry another way: by reaching an agreement with the state that permits him to admit guilt, serve probation, and appear on the registry without ever having a criminal judgment entered against him, through the mechanism known as "judicial diversion." Judicial diversion permits a court to accept a plea of guilty or *nolo contendere* but later dismiss the case without adjudication of guilt if the defendant successfully complies with his probation requirements. *See* Tenn. Code Ann. § 40-35-313; Tenn. Code Ann. § 40-39-202(1). Although a judicial diversion plea is not a conviction in the ordinary sense, it is defined as a "conviction" for the purposes of the Act. Tenn. Code Ann. § 40-39-202(1).

That is what happened to Santini, who entered into a judicial diversion plea agreement for committing incest and statutory rape against a non-blood relative. Santini does not dispute that he agreed, as part of his plea deal, for TBI to place him on the registry, at least for a period time. As the transcript of Santini's plea proceedings unambiguously shows, however, the State of Tennessee promised Santini that, if and when he successfully completed his probation and was discharged

---

[1] It is possible, however, to qualify for registration based on the kidnapping of a child other than one's own, without any additional sexual component. Tenn. Code Ann. § 40-39-202(20)(a)(vi).

2

from judicial diversion, TBI would remove him from the registry. But when Santini *did* successfully complete judicial diversion a few years later, TBI not only refused to remove him but informed him of its intent to keep him on the registry for life. This case poses the question of whether 42 U.S.C. § 1983 grants Santini some relief against TBI in such a situation or whether, instead, he must either turn elsewhere or live with the consequences of the State of Tennessee's about-face for the rest of his life.

## A. Judicial Diversion and the Act's Requirement of a "Conviction"

The term "sexual offender," under the Act, requires that an individual "has been convicted in this state of committing a sexual offense or has another qualifying conviction." Tenn. Code Ann. § 40-39-202(19). The term "violent sexual offender" includes the same general "conviction" requirement, but with regard to a different set of offenses. Tenn. Code Ann. § 40-39-202(30). The definition of "conviction" used by the Act, however, "include[s] a plea taken in conjunction with [Tennessee's judicial diversion statute] or its equivalent in any other jurisdiction." Tenn. Code Ann. § 40-39-202(1). While a judicial diversion plea does entail an admission of guilt (or *nolo contendere*), that admission is made "without the entry of a judgment," at least at first. *State v. Dycus*, 456 S.W.3d 918, 925 (Tenn. 2015) (quoting *State v. King*, 432 S.W.3d 316, 323 (Tenn. 2014)). Rather, an individual who receives judicial diversion has the opportunity to complete a period of probation, after which, "[i]f . . . the person d[id] not violate any of the conditions of the probation, . . . the court shall discharge the person and dismiss the proceedings against the person." Tenn. Code Ann. § 40-35-313(a)(2). That dismissal is, as a matter of law, "without court adjudication of guilt" and, at least for general purposes, "shall not be deemed a conviction for purposes of disqualifications or disabilities imposed by law upon conviction of a crime or for any other purpose." *Id.* The Act's definition of "conviction" creates an exception to that rule but does

not otherwise change the fundamental nature of judicial diversion as a practice. Accordingly, there is a limited set of individuals who have not been convicted of sexual offenses as a matter of general Tennessee criminal law but who are treated as having been "convicted" for the purposes of the Act.

Judicial diversion is "a form of legislative largess" and, as such, is only available to the extent authorized by the Tennessee General Assembly. *Dycus*, 456 S.W.3d at 925 (quoting *King*, 432 S.W.3d at 323). Many sexual offenses are not diversion-eligible. A few, though, are or have been in the past. *Compare* Tenn. Code Ann. § 40-35-313(a)(1)(B)(ii) (listing diversion-ineligible sexual offenses) *with* Tenn. Code Ann. § 40-39-202(20), (31) (listing sexual offenses and violent sexual offenses). Since 2019, the Act has provided that the TBI shall remove an offender from the registry if "[t]he offender previously entered a term of judicial diversion . . . , prior to May 24, 2019, for the offense for which the person [was] required to register . . . and subsequently successfully complete[d] the term of judicial diversion." Tenn. Code Ann. § 40-39-207(c)(2); *see* 2019 Tenn. Laws Pub. Ch. 502 (H.B. 624). TBI, however, has construed that provision to apply only to "sexual offenders" but not "violent sexual offenders," whom, it argues, must continue to register for life, despite the completion of their judicial diversion or even the expungement of their pleas. (*See* Doc. No. 25-8.)

### B. Santini's Plea and Registration

On March 14, 2014, Santini entered a guilty plea to incest, Tenn. Code § 39-15-302, and statutory rape, Tenn. Code § 39-13-506, in Tennessee's Sixteenth Judicial District.[2] (Doc. No. 51

---

[2] According to Santini, "[t]hese charges were based on a relationship with a legal (but not biological) sibling who was still a minor." (Doc. No. 24 ¶ 8.) Tennessee's incest statute criminalizes, among other things, "sexual penetration" of or by the defendant's "brother or sister of the whole or half-blood *or by adoption*." Tenn. Code Ann. § 39-15-302(a)(2) (emphasis added). Santini's judicial diversion order indicates that he was the victim's "stepbrother." (Doc. No. 1-1 at 1.) Under Tennessee law, a charge of statutory rape can be based on "unlawful sexual penetration" of a person as young as 13 or as old as 17, depending on the age of

4

¶¶ 1, 3.) Although incest is not currently an offense for which judicial diversion is eligible, that was not the case in 2014. *See* 2018 Tenn. Laws Pub. Ch. 951 (H.B. 149) (adding incest to list of diversion-ineligible sexual offenses). Pursuant to Santini's plea deal, he would receive judicial diversion accompanied by four years of probation, and that probation would include certain agreed-upon "special conditions." (Doc. No. 51 ¶ 4.) Among those agreed-upon conditions was that Santini would be placed on the sexual offender registry during his probation period. The assistant district attorney general representing the State of Tennessee described the relevant portions of the underlying plea deal to the state court as follows:

> The Defendant should be granted deferral on these charges. . . . [H]e will have sex offender treatment and take responsibility for his actions. He will be on the sex offender registry and follow the requirements. And that would be for the period of his diversion if he complies with all conditions and completes it. And that diversion will be for a total of four years. If he loses the diversion, he understands that he will be on the sex offender registry for a lot longer than that.

(Doc. No. 25-2 at 4; Doc. No. 51 ¶ 5.) It is undisputed for the purposes of summary judgment that Santini "heard this promise, relied upon it, and entered the plea agreement understanding that his [registry] compliance obligation terminated if he successfully completed his diversion." (Doc. No. 51 ¶ 6.)

The written Order ultimately granting Santini diversion acknowledges that Santini would be placed on the registry and required to "follow [its] requirements," but it makes no explicit statement regarding the duration of his registry obligation or the circumstances, if any, under which he could be discharged from that obligation. The reference to registration, however, appears as part of the "SPECIAL CONDITIONS" of his probation, and his probation was, on the face of the

---

the defendant. Tenn. Code Ann. § 39-13-506. According to the transcript of Santini's plea proceeding, his victim was younger than 15, and Santini was more than 4 but fewer than 10 years older than the victim. (Doc. No. 25-2 at 2–3.)

Order, set to expire after four years. (Doc. No. 25-1 at 1–4; Doc. No. 51 ¶¶ 7–8.) Both Santini and the assistant district attorney signed the special conditions. (Doc. No. 51 ¶ 9.)

Santini successfully completed the four years of probation without losing his diversion status, and he filed a Motion to Dismiss and Expunge related to the charges against him. (Doc. No. 51 ¶¶ 10–11.) After a bit of a delay, on April 23, 2019, the state court entered an Order of Dismissal, stating that Santini had "successfully completed all conditions of his diversion." (Doc. No., 47-3; Doc. No. 51 ¶ 12.) The same day, the court entered an Order of Expungement, stating that "[i]t is ordered that all PUBLIC RECORDS relating to such offense above referenced be expunged and immediately destroyed upon payment of all costs to [the] clerk." (Doc. No. 25-5 at 1; Doc. No. 51 ¶ 13.)

On May 1, 2019, Santini mailed the Order of Expungement to TBI and requested that he be removed from the sexual offender registry. (Doc. No. 47-4; Doc. No. 51 ¶ 14.) On July 31, 2019, TBI mailed Santini a letter denying his request. (Doc. No. 51 ¶ 15; Doc. No. 25-7.) On March 2, 2020, counsel for Santini sent a second request that he be removed from the sexual offender registry, explaining in greater detail why he believed he was entitled to removal. (Doc. No. 25-6; Doc. No. 51 ¶ 16.) On April 29, 2020, TBI sent a second letter denying the request. (Doc. No. 25-8; Doc. No. 51 ¶ 17.) In the letter, TBI Associate Counsel Rachel Russell argued that Tenn. Code Ann. § 40-39-207(c)(2)'s requirement that TBI remove an individual from the registry when he completed his judicial diversion did not apply to Santini, because his conviction for incest was instead governed by the provision, now codified at Tenn. Code Ann. § 40-39-207(g)(2), dictating that "[a]n offender required to register under this part shall continue to comply with the registration, verification and tracking requirements for the life of that offender, if that offender . . . [h]as been convicted of a violent sexual offense, as defined in [Tenn. Code Ann.] § 40-39-202."

Tenn. Code Ann. § 40-39-207(g)(2). (Doc. No. 51 ¶ 18.) Incest has been defined by the Act as a "violent criminal offense" since before Santini's plea or his underlying alleged actions. *See, e.g.*, Tenn. Code Ann. § 40-39-202(30)(V) (2011).

Since that impasse arose, TBI has continued to treat Santini as a violent sexual offender for the purposes of the Act, and Santini has continued to complain—accurately—that TBI's actions directly contradict the express assurances given to him by the State of Tennessee during his plea proceeding. (Doc. No. 51 ¶ 20.) It is undisputed for the purposes of summary judgment that "[c]ompliance with the registry's obligations are a constant mental burden during everyday life impacting everything from Santini's choice of residence and romantic partners to internet usage." (*Id.* ¶ 21.) The Director also concedes, for the purposes of summary judgment, that "Santini's religious life is impacted" by his registry status, because "he opts to attend online church services to avoid the complications created by" TBI's continued inclusion of him on the registry. (*Id.* ¶ 22.) Santini testified that he has missed out on jobs for which he is qualified due to his registry status, and, while the Director takes issue with aspects of Santini's characterization of his employment situation, the Director has not identified any ground for disbelieving that, as a general matter, Santini's professional options have been damaged by his registration status. (*Id.* ¶ 25.) Finally, it is undisputed that Santini's presence on the registry has interfered, at least in some ways, in his parenting of his two minor children, such as by barring him from attending his younger child's school activities. (Doc. No. 51 ¶ 24.)

On July 31, 2020, Santini filed a Complaint in this court setting forth claims pursuant to 42 U.S.C. 1983, based on the alleged denial of his federal constitutional rights. (Doc. No. 1.) On December 23, 2020, he filed a First Amended Complaint. (Doc. No. 24.) He pleaded three counts: Count I was for denial of due process related to TBI's refusal to remove him from the registry;

7

Count II was for denial of due process based on the State of Tennessee's alleged breaching of his plea agreement; and Count III was for the unlawful imposition of an *ex post facto* criminal punishment. (*Id.* ¶ 28.) The Director filed a motion asking the court to dismiss all three counts. (Doc. No. 28.) On May 21, 2021, the court granted the motion in part and denied it in part, dismissing Counts I and III but recognizing the potential viability of Count II. (Doc. Nos. 39–40.) Each party now seeks summary judgment as to that claim. (Doc. Nos. 45, 48.)

## II. LEGAL STANDARD

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To win summary judgment as to the claim of an adverse party, a moving defendant must show that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim. Once the moving defendant makes its initial showing, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Conversely, to win summary judgment as to his own claims, a moving plaintiff must demonstrate that no genuine issue of material fact exists as to all essential elements of his claims. "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence

8

in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. 242, at 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

## II. ANALYSIS

The Director does not dispute that Santini's plea agreement included, or at least was accompanied by, an express promise that Santini would be removed from the registry when he completed his probation. Nor does the Director dispute that TBI is, as a purely administrative matter, capable of removing Santini. Indeed, the Act requires TBI to remove many registrants who completed judicial diversion, and TBI has never suggested that removal would require more than a few quick keystrokes in the agency's master database. Rather, TBI has explained that it intends to keep Santini on the database because, based on TBI's (debatable[3]) reading of the underlying statutes, TBI believes that Santini qualifies for a lifetime registration obligation, even if that obligation would directly contradict his plea agreement. The Director argues that Santini's § 1983 claim seeking injunctive and declaratory should fail, both because it is untimely and because TBI has no obligation to honor the assistant district attorney general's promise, which, the Director argues, was contrary to the law.

---

[3] As the court noted in its earlier Memorandum, Santini has a colorable legal argument that, in addition to the significant constitutional issues posed by TBI's disregarding of the terms of his plea agreement, TBI is simply misreading Tennessee's statutes and, as a result, disobeying a specific directive of the General Assembly to remove any person in Santini's position from the registry upon his successful completion of judicial diversion. (Doc. No. 39 at 8–10.) The court dismissed that aspect of Santini's claim, not because he was wrong about Tennessee law, but simply because "a violation of state law"—without a concurrent violation of federal law—"cannot support a cause of action under § 1983." *Otworth v. Vanderploeg*, 61 F. App'x 163, 166 (6th Cir. 2003) (citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 155–57 (1978)). The court's ruling was without prejudice to Santini's pursuing his state law argument through other means.

9

**A. Timeliness**

The statute of limitations for a § 1983 action is the "state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). The limitations period for § 1983 actions arising in Tennessee is the one-year limitations provision found in Tenn. Code Ann. § 28-3-104(a). *Porter v. Brown*, 289 F. App'x 114, 116 (6th Cir. 2008). Under Tennessee law governing the calculation of statutes of limitations, "the date of the act, event or default after which the designated period of time begins to run is *not* to be included" in determining the period during which a claim can be brought, and "[t]he last day of the period so computed *shall* be included." Tenn. R. Civ. P. 6.01 (emphasis added); *see also* Fed. R. Civ. P 6(a)(1)(A), (C) (setting forth same rule). In other words, if a claim subject to a one-year statute of limitations accrued on January 2 of a year, then the plaintiff would have a one-year period, from January 3 of that year through and including January 2 of the next year, to file his claims. *See Smith v. Hose*, No. 03A01-9501-CV-0006, 1995 WL 371675, at *1 (Tenn. Ct. App. June 21, 1995) (providing example of how to calculate end date of one-year statute of limitations). Based on that rule, Santini's § 1983 claim filed on July 31, 2020, was only timely if it accrued on July 31, 2019 or later.

"[T]he accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Claims accrue and the statute of limitations period begins to run when the plaintiff knows or has reason "to know of the injury which is the basis of his action." *Roberson v. Tenn.*, 399 F.3d 792, 794 (6th Cir. 2005). This inquiry is objective, and courts look "to what event should have alerted the typical layperson to protect his or her rights." *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 548 (6th Cir. 2000).[4] It is

---

[4] Despite the fact that this principle is well-established in the caselaw of this circuit, the Director urges the court to abandon it and hold that no discovery rule exists for § 1983 claims, at least in Tennessee, based on

the court's responsibility to "determine whether the alleged precipitating event or events occurred more than a year before [the plaintiff] filed the complaint." *Standridge v. Tenn. Dep't of Children's Servs.*, No. 3:08-CV-133, 2009 WL 348782, at *7 (E.D. Tenn. Feb. 10, 2009).

TBI argues that Santini's cause of action accrued "when he first became subject to lifetime compliance, which occurred when he pled guilty to a violent sexual offense on March 14, 2014." (Doc. No. 49 at 12.) The court already considered and rejected this argument. (Doc. No. 39 at 12–13.) Santini does not argue that the terms of his plea agreement, if they had been honored, were inconsistent with federal law, nor does he argue that placing him on the registry violated federal law. He argues, rather, that federal law was violated when the TBI refused to remove him from the registry, which happened on July 31, 2019. The fact that TBI may have, unbeknownst to him, already made up its mind about his lifetime registration obligation is not a basis for holding that Santini's cause of action accrued any earlier, both because no actual injury occurred until the TBI's non-removal decision actually took effect and because Santini had no reasonable basis for knowing TBI's plans until TBI shared them with him. Santini, accordingly, filed his Complaint just in time—within exactly one year of his injury, as one year is calculated under Tennessee law. He is therefore entitled to summary judgment on the issue of timeliness.

**B. Santini's Right to Removal from the Registry**

"Because a defendant obtains a plea agreement only at the expense of his constitutional rights, 'prosecutors are held to meticulous standards of performance'" once the deal is in place. *United States v. Moncivais*, 492 F.3d 652, 662 (6th Cir. 2007) (quoting *United States v. Vaval*, 404

---

the Director's reading of Tenn. Code Ann. § 28-3-104(a). The only support the Director offers for that position is a citation to *Rotkiske v. Klemm*, 140 S. Ct. 355, 361 (2019), which was not a § 1983 case. Moreover, the court notes that the Director's position would not only require an overturning of the specific principle that the discovery rule applies to § 1983 claims, but also the broader, foundational principle that federal, not state, law governs the accrual of such a claim in the first place.

11

F.3d 144, 152–53 (2d Cir. 2005)). Due process requires that, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *United States v. Carter*, 814 F. App'x 1000, 1007 (6th Cir. 2020) (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971)); *accord United States v. Ligon*, 937 F.3d 714, 718 (6th Cir. 2019); *see also United States v. Randolph*, 230 F.3d 243, 249 (6th Cir. 2000) (observing that that rule is "derived from the constitutional guarantee of due process"). As this court noted in its prior opinion, Tennessee courts recently applied that very rule in a defendant's favor in a case involving an individual who pleaded guilty based on assurances, later proven to be false, that he would avoid the registry. *See Foley v. State*, No. M2018-01963-CCA-R3-PC, 2020 WL 957660 (Tenn. Crim. App. Feb. 27, 2020). That case, however, involved an individual who had actually been convicted under Tennessee law, not an individual who received and successfully completed judicial diversion. *See id.* at *1.

The aforementioned well-established principles of due process, combined with the unusually clear and explicit explanation of Santini's plea deal in the state court transcript, would seem to make this a relatively straightforward case. The State of Tennessee promised Santini something in exchange for his plea and his compliance with probation requirements, but, when Santini fulfilled his half of the bargain, Tennessee simply refused to do the same. Under the caselaw, that violated his right to due process. Nevertheless, the Director argues that Santini is not entitled to removal from the registry for two reasons: first, that the assistant district attorney general for the Sixteenth Judicial District had no authority to "bind" the State of Tennessee to the terms of the agreement; and, second, that, even if the plea agreement was binding, specific performance is not the appropriate remedy.

12

It is worth noting what neither of those arguments asserts: that the process by which Santini ended up on the registry for life comported with the Constitution. Even if one assumes *arguendo* that the assistant district attorney lacked the authority, under Tennessee law, to "bind" the state, that does not actually solve the underlying due process problem, which arose from the assistant district attorney's promise and Santini's reliance on it—not from whether the promise was authorized or not. An unconstitutional act is not rendered constitutional merely because a review of state statutes reveals *more* illegality. To the contrary, courts routinely find due process violations in cases in which "a defendant agree[d] to a sentence that [was] not permitted by law," making the deal, unbeknownst to the defendant, "illegitimate." *Pickens v. Howes*, 549 F.3d 377, 381 (6th Cir. 2008) (collecting cases); *see also Ruelas v. Wolfenbarger*, 580 F.3d 403, 409 (6th Cir. 2009) ("Plea agreements may be held invalid if prosecutors, defense counsel, and the court are confused or mistaken as to the law . . . .") (citing *Bousley v. United States*, 523 U.S. 614, 618–19 (1998)). And the alternative argument against ordering specific performance is just what it purports to be: an argument about *remedies*, not an argument that Santini's rights were actually honored. That does not mean that the Director is wrong that he should nevertheless prevail on the pending motions; a person or entity that broke the law may still win in litigation if, for example, the plaintiff's claims are procedurally barred. Nevertheless, the fact that there appears to be no argument whatsoever that Santini's situation was handled properly by the State of Tennessee—only questions of which state agents erred and what, if anything, this court can grant Santini as a remedy—does clarify what this litigation is about.

The Director originally argued that the assistant district attorney had no power to bind TBI because TBI and the District Attorney General's Office for the Sixteenth Judicial District are distinct entities. The court rejected that argument on the ground that Santini's deal was not with

the assistant district attorney general, but with the State of Tennessee, of which TBI is a wholly subsidiary agency. *See* Tenn. Code Ann. § 40-3-104 ("All criminal actions are prosecuted in the name of the state of Tennessee against the party charged with the offense."); Tenn. Code Ann. § 38-6-101 (creating TBI). The Director's argument now, however, is not that the assistant district attorney was incapable of binding state agencies such as TBI *at all*. Rather, the Director argues that the assistant district attorney was unable to bind the state because this particular promise was not one that the assistant district attorney was authorized to make under the Act. Because the promise was not authorized, the Director argues, Santini should not prevail on a claim to enforce it.

The Director is correct that the Sixth Circuit has at times suggested that, while "[f]undamental fairness" requires the government to honor authorized plea agreements, the same principles do not "require the government to honor promises that its agents have made in . . . a plea bargain" if the individual agents at issue were not "authorized to make" those particular promises. *Taylor v. United States*, 2 F. App'x 485, 488 (6th Cir. 2001) (*United States v. Streebing*, 987 F.2d 368, 372 (6th Cir.1993)). At other times, however—sometimes even within the same opinion— the Sixth Circuit has appeared to acknowledge that *apparent* authority could have a similar effect. Indeed, in the very case that the Director cites for this supposed requirement—*United States v. Streebing*—the Sixth Circuit, despite first appearing to announce an "actual authority" requirement, ultimately based its conclusion on the fact that the government employee at issue "lacked any actual *or apparent* authority to make the alleged promise not to prosecute." *Streebing*, 987 F.2d at 373 (emphasis added). *Streebing* also acknowledged that, whatever general rule it was applying, "[a]n exception has been recognized where," although the agreement otherwise would not be considered binding, "breach of the agreement rendered a prosecution fundamentally unfair."

*Id.* at 373 (quoting *United States v. Williams*, 780 F.2d 802, 803 (9th Cir. 1986)). The rule of *Streebing*, therefore, was neither ironclad nor particularly clear regarding its scope.

In the earlier case of *Peavy v. United States*—which *Streebing* did not purport to overrule—the Sixth Circuit similarly suggested that the binding nature of a promise might depend on whether the promisor had "authority, actual or apparent." *Peavy v. United States*, 31 F.3d 1341, 1347 (6th Cir. 1994); *see also United States v. El-Sadig*, 133 F. Supp. 2d 600, 606 (N.D. Ohio 2001) (noting that "the law of the Sixth Circuit is not as clear" as the law in other circuits on this issue). The fact that the Sixth Circuit's rule is based on considerations of fundamental fairness, moreover, would seem to support a consideration of apparent, not merely actual authority; otherwise, "fundamental fairness" could end up hinging on the often opaque, behind-the-scenes question of which government agents were actually authorized to do what.

The Sixth Circuit has provided little elaboration on how its rule—whatever that rule is—should apply to novel situations such as this one. The few occasions in which the Sixth Circuit applied its standard posed much easier questions, both substantively and procedurally. For example, in *Taylor v. United States*, the Sixth Circuit held, unsurprisingly, that the federal government was not bound by representations of state police. *Taylor*, 2 F. App'x at 487. In *Streebing*, the Sixth Circuit held that the government was not bound by the representations of an FBI agent—again, unsurprising, given that FBI agents do not make prosecution decisions. *Streebing*, 987 F.2d at 372. *Peavy* involved the same issue: whether FBI agents can bind prosecutors. *See Peavy*, 31 F.3d at 1344. Each of those holdings would have been dictated by either an "actual authority" standard or an "actual or apparent authority" standard—and *Streebing*, as this court has noted, even appears to have applied an "actual or apparent authority" analysis,

15

despite its general statements seeming to endorse the approach now urged by the Director.[5] *But see FDIC v. Merrill*, 332 U.S. 380, 384 (1947) (discussing general considerations weighing against applying apparent authority principles to the government).

*Streebing*, *Taylor*, and *Peavy*, moreover, each involved a challenge to the underlying criminal case in which the plea deal was made, whereas this case does not. *Taylor* involved a motion to vacate sentence under 28 U.S.C. § 2255. *Taylor*, 2 F. App'x at 487. *Peavy* involved a motion to withdraw plea under Fed. R. Crim. P. 32(d). *Peavy*, 31 F.3d at 1343. *Streebing* was even more closely connected to the initial criminal proceeding; it was a direct appeal.[6] *Streebing*, 987 F.2d at 371. The question of whether to require the government to honor the plea deal or resume its prosecution was therefore squarely before the court in each of those cases. Here, in contrast, the underlying criminal case has been dismissed with prejudice and expunged, and all that is before the court is a § 1983 claim against the director of a government agency that neither prosecuted nor adjudicated Santini's criminal case but that is responsible for the actions now being taken against him. This case therefore presents a wholly different procedural posture than the Sixth Circuit cases on which the Director relies, particularly with regard to the relationship between Santini's claim and the original criminal case against him, which, in Santini's case, never resulted in a criminal conviction.

---

[5] Moreover, none of the Sixth Circuit cases involving authority to bind the government actually addressed the core issue present here. *Peavy*, *Streebing*, and *Taylor* all involved the division of authority *between* government agents—particularly the need for the courts to recognize the division between prosecutors and investigators. The assistant district attorney in Santini's criminal case, however, was not simply some police officer or an agent of a wholly different government; she was precisely the person with whom Santini needed to—and did—negotiate to secure a plea deal with consequences acceptable to him.

[6] The Washington state case cited heavily by the Director, *State v. Barber*, 248 P.3d 494, 496 (Wash. 2011), was also based on a direct appeal. The case in which the Tennessee Court of Appeals vacated a plea agreement based on the government's false promise of avoiding the registry involved a state post-conviction petition. *Foley*, 2020 WL 957660, at *7. Accordingly, those cases, like the Sixth Circuit cases involving collateral or direct attacks, are procedurally inapposite.

16

Ultimately, the question of whether the assistant district attorney had the power to "bind" the State of Tennessee or the TBI confuses far more than it illuminates. This is not a contract case. It is, rather, a case under § 1983, a statute that "create[s] a species of federal *tort* liability for individuals to sue state and local officers for deprivations of constitutional rights." *Thompson v. Clark*, 142 S. Ct. 1332, 1337 (2022) (emphasis added); *see also id.* ("To determine the elements of a constitutional claim under § 1983, this Court's practice is to first look to the elements of the most analogous tort as of 1871 when § 1983 was enacted, so long as doing so is consistent with 'the values and purposes of the constitutional right at issue.'") (quoting *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 921 (2017)). On its face, § 1983 provides its tort cause of action to any "person within the jurisdiction" of the United States who was "subject[ed]" to the "deprivation of any rights, privileges, or immunities secured by" federal law, if the deprivation was made by a person acting under color of law. By that plain language, the statute provides a remedy in this situation.

Sometimes, the "literal applicability" of § 1983 must yield to a more specific body of law, such as the law of directly or collaterally challenging a conviction or sentence, *see Nelson v. Campbell*, 541 U.S. 637, 643 (2004), as convicted individuals did in *Peavy*, *Streebing*, and *Taylor*. The Director's preferred analogy to agency and contract principles probably does make sense in those cases, when a plea deal is still being evaluated, based on its significance to the original criminal case in which it occurred. As the court has already explained, however, Santini's claim is not a collateral challenge to a conviction or formal sentence, no matter how much it superficially looks like one. (Doc. No. 39 at 22.) If Santini's claim were such a challenge, it would likely be barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and its progeny, and none of these other issues would be before the court. (*Id.* at 15–18.) But Santini does not a challenge a conviction because he was not convicted. Santini's claim is, rather, a straightforward § 1983 claim based on

17

administrative actions taken by TBI after Santini's criminal case was closed and expunged. Ordinary § 1983 tort principles therefore apply. Under those principles, he is not asking for "specific performance," at least not *per se*; he is asking for a prospective remedy to address his constitutional injury—whatever that remedy looks like—because that is what Congress has granted him.

Section 1983 "allows an individual to bring a civil action, against a person operating under color of state law, to enforce rights granted by the United States Constitution or another federal statute." *Cox v. Shelby State Cmty. Coll.*, 48 F. App'x 500, 503 (6th Cir. 2002). As applied to this case, § 1983 asks a straightforward question: Does the practice of keeping Santini on the registry based solely on a plea that was expressly premised on his not remaining on the registry in this situation violate a right secured by federal law? For reasons that the court has discussed at length, it does. The only basis for keeping Santini on the registry is his judicial diversion plea, and "[a] trial court may not impose judicial diversion except with the defendant's consent." *State v. Norris*, 47 S.W.3d 457, 463 (Tenn. Crim. App. 2000). That consent represents a "*quid pro quo*" between the defendant and the government. *Id.* The government's side of the *quid pro quo* in Santini's case has never been completed, yet it is restricting his basic rights as if it had. Under settled, binding caselaw, that violates the federal guarantee of due process. Santini is therefore entitled to succeed on his § 1983 claim.

The only actual issue to resolve, then, is one of remedies. Santini seeks two remedies: (1) declaratory relief confirming that his rights have been violated; and (2) injunctive relief requiring the Director to remove Santini from the registry and cease enforcing the Act against him. The parties' disagreement is chiefly about the second request; the Director argues that Santini is not entitled to an injunction that would require the Director to remove him from the registry. Santini's

situation, however, resembles others in which such relief is often found to be available. For example, it is well-settled that, while other avenues are appropriate for challenging the "validity" of a conviction or a sentence, § 1983 provides remedies, including prospective relief, for injuries arising out of the "circumstances" in which a sentence is carried out. *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)). Santini's claim does not involve his formal sentence, but it challenges secondary conditions that have been imposed on him pursuant to the disposition of his criminal case, just as those types of challenges do. The court, moreover, sees little reason why § 1983's remedies would be *less* available because no actual sentence or conviction is implicated. Santini's situation, therefore, does appear to be analogous to those in which § 1983 typically provides an equitable remedy.

Ultimately, as with the issue of liability, the answer to whether Santini is entitled to an injunction can be found by applying the ordinary caselaw governing § 1983 claims. Under that caselaw, injunctive relief is available under § 1983 if a plaintiff is able to "meet the usual requirements" for supporting a prospective exercise of the court's equitable powers. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (citation omitted). Those usual requirements, "[a]ccording to well-established principles of equity," require a plaintiff to "demonstrate: (1) that [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Those factors support an award of injunctive relief here. Santini has been and will continue to be irreparably injured by his registry status in numerous ways that no other relief could adequately address. *See Snyder*, 834 F.3d at 701–06 (detailing harms associated with inclusion on

19

a sexual offender registry). And it is well-settled that "the public interest is served by preventing the violation of constitutional rights." *Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 436 (6th Cir. 2004) (citation omitted). The ordinary rules therefore support an award of equitable relief.

The caselaw, moreover, recognizes that a certain degree of flexibility is helpful when it comes to rectifying a plea agreement gone awry, even if that flexibility comes at the expense of a formalistic preference for doing a deal over until the parties get it 100% right. For example, "when a sentence is modified to make it consistent with state law and to give the defendant the benefit of his original plea agreement, the Constitution does not require the withdrawal of a once-illegal plea," *Pickens v. Howes*, 549 F.3d 377, 381–82 (6th Cir. 2008), even though the process by which the plea was reached and entered was technically improper. Such an approach is consistent with the "strong, legitimate, and well-established government interest" in the finality of plea agreements. *In re United States*, No. 21-1318, 2022 WL 1222955, at *3 (6th Cir. Apr. 26, 2022) (*citing Lee v. United States*, 137 S. Ct. 1958, 1967 (2017); *United States v. Blewett*, 746 F.3d 647, 651 (6th Cir. 2013)). Granting Santini relief that straightforwardly fixes the only unconstitutional aspect of his situation—his continuing and lifelong registration obligation—similarly furthers that interest.

Finally, the court notes that granting injunctive relief against the Director, unlike a hypothetical order requiring a state court to accept a particular plea agreement, avoids any problematic intrusion on the prerogatives of Tennessee's state courts. For example, when a prisoner files a § 2254 habeas petition alleging that a promise on which his state plea rested was violated, the federal court receiving the petition is not permitted to require the state court to approve a modified agreement, because doing so would amount to exercising a "supervisory

authority" that a federal district court does not possess over a state court. *Koresjza v. Harry*, No. 16-2316, 2017 WL 6375583, at *3 (6th Cir. Dec. 12, 2017) (quoting *McPherson v. Barksdale*, 640 F.2d 780, 781 (6th Cir. 1981)). An injunction directed solely at the Director and ordering him to cease an unconstitutional practice, however, does not infringe on the authority of the state courts at all.[7] It is, rather, the kind of ordinary § 1983 injunction that courts commonly enter in cases involving unconstitutional actions by a state agency.

The court accordingly holds that Santini is entitled to injunctive relief against the Director under § 1983. The court stresses that its holding does not signal a repudiation of the principle that "[f]ederal courts may not *ordinarily* choose the appropriate remedy for violations of plea bargains during state criminal proceedings." *McPherson v. Barksdale*, 640 F.2d 780, 781 (6th Cir. 1981) (emphasis added). To the contrary, Santini concedes that general rule; he simply explains, persuasively, why his is not an ordinary case. (Doc. No. 53 at 8.) Specifically, the court's holding that Santini is nevertheless entitled to prospective relief against the Director pursuant to § 1983 depends on at least three essential factors that, if not wholly unique to Santini alone, do set Santini's situation apart from the overwhelming bulk of superficially similar cases. First, as the court discussed in its earlier opinion, if this case had involved an actual criminal conviction, it would likely be governed by *Heck v Humphrey*, and no § 1983 relief would be available. Only the fact that Santini was never actually convicted makes this option available to him. Second, if this case had involved an issue related to Santini's formal judicial diversion sentence—that is to say, his actual probation—then it might be appropriate to require him to simply go back to the state court, rescind the initial plea in his still-extant criminal case, and begin again. The sexual offender registry, however, is, at least nominally, a separate civil regime that is being applied to Santini

---

[7] Indeed, it is the Director—not Santini or this court—who seeks to disregard the terms of the disposition of Santini's case that were approved in a state court.

now, despite the fact that his probation is over, his criminal charges were dismissed with prejudice, and his case was expunged. The court's holding that Santini is entitled to injunctive relief under § 1983 is premised on the fact that such relief bears exclusively on that separate administrative regime, rather than the diversion sentence itself. Finally, the court notes that this is not a situation in which Santini simply misunderstood or was ignorant about the registry consequences of his plea. He was affirmatively assured that Santini would be removed from the registry at a certain point, and the Director has conceded that Santini relied on that assurance in making his plea decision. If any of those three facts had been different, the outcome of this case might have been different as well. On the facts as they are, however, Santini is entitled to summary judgment in his favor and a permanent injunction ensuring his removal from the registry.

## V. CONCLUSION

For the foregoing reasons, Santini's Motion for Summary Judgment (Doc. No. 45) will be granted, and the Director's Motion for Summary Judgment (Doc. No. 48) will be denied. Judgment will be granted in favor of Santini, and the court will issue a permanent injunction requiring his removal from the sexual offender registry.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

22