# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| BENJAMIN SANTINI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:20-cv-00661 |
| ) | Judge Aleta A. Trauger |
| DAVID RAUSCH, in his official capacity ) | |
| as Director of the Tennessee Bureau of ) | |
| Investigation, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM & ORDER

Benjamin Santini has filed a Motion for Attorney's Fees, Costs, and Litigation Expenses (Doc. No. 59), to which Tennessee Bureau of Investigation ("TBI") Director David Rausch ("Director") has filed a Response (Doc. No. 64), and Santini has filed a Reply (Doc. No. 65). For the reasons set out herein, the motion will be granted, as modified by the court.

## I. BACKGROUND

On July 31, 2020, Santini filed a Complaint asserting claims based on his ongoing inclusion on the Tennessee sexual offender registry, which TBI oversees. (Doc. No. 1.) Among other things, Santini alleged that TBI's refusal to remove him from the registry violated his original judicial diversion plea deal, which had included assurances that his presence on the registry would be temporary, as long as he complied with the conditions of his probation—which he did. As later amended, Santini's Complaint set forth three counts: Count I was for denial of due process related to TBI's handling of Santini's request to be removed from the registry; Count II was for denial of due process based on the State of Tennessee's breach of his plea agreement; and Count III was for the unlawful imposition of an *ex post facto* criminal punishment. (Doc. No. 24 ¶ 28.)

The Director filed a Motion to Dismiss pursuant to Rule 12(b)(6) (Doc. No. 28), which the court granted as to Counts I and III but denied as to Count II. (Doc. No. 40 at 1.) Eventually, the parties filed respective motions for summary judgment on the remaining count (Doc. Nos. 45, 48), and, on May 5, 2022, the court granted Santini's motion and denied the Director's. (Doc. No. 57.) The court explained that, while individuals alleging violations of their state plea deals typically have limited options in federal court, the relatively unique features of Santini's situation supported a departure from that ordinary rule:

> The court stresses that its holding does not signal a repudiation of the principle that "[f]ederal courts may not ordinarily choose the appropriate remedy for violations of plea bargains during state criminal proceedings." *McPherson v. Barksdale*, 640 F.2d 780, 781 (6th Cir. 1981) (emphasis added). . . . [T]he court's holding that Santini is nevertheless entitled to prospective relief against the Director pursuant to § 1983 depends on . . . essential factors that, if not wholly unique to Santini alone, do set Santini's situation apart from the overwhelming bulk of superficially similar cases. First, as the court discussed in its earlier opinion, if this case had involved an actual criminal conviction, it would likely be governed by *Heck v Humphrey*, [512 U.S. 477 (1994),] and no § 1983 relief would be available. Only the fact that Santini was never actually convicted makes this option available to him. Second, if this case had involved an issue related to Santini's formal judicial diversion sentence—that is to say, his actual probation—then it might be appropriate to require him to simply go back to the state court, rescind the initial plea in his still-extant criminal case, and begin again. The sexual offender registry, however, is, at least nominally, a separate civil regime that is being applied to Santini now, despite the fact that his probation is over, his criminal charges were dismissed with prejudice, and his case was expunged. The court's holding that Santini is entitled to injunctive relief under § 1983 is premised on the fact that such relief bears exclusively on that separate administrative regime, rather than the diversion sentence itself.

(Doc. No. 56 at 21–22.) The court entered judgment in Santini's favor, including injunctive relief requiring the Director to remove Santini from the registry. (Doc. Nos. 57–58.) The Director did not appeal.

On May 18, 2022, Santini filed a Motion for Attorney's Fees, Costs, and Litigation Expenses, purporting to seek $43,345.00 in fees and $767.90 in other expenses. (Doc. No. 59 at 1.) Based on the math that Santini cites, however, that fee request appears to be a typo. Santini

claims that his attorney worked 94.1 hours at a rate of $450/hour. (Doc. No. 60 at 6.) That adds up to $42,345.00—suggesting that Santini may have simply gotten a digit wrong. The court will therefore construe his motion as seeking $42,345.00 in fees, not $43,345.00.

The Director filed a Response, in which he does not dispute Santini's entitlement to some attorney's fees or Santini's calculation of non-fee costs. (Doc. No. 64.) The Director argues, however, that the court should reduce the fees to $32,935.00, on the ground that Santini's attorney calculated those fees based on an hourly rate ($450) that is in excess of his usual rate. (*Id.* at 1–3.)

Santini has provided a Declaration of his lead counsel, Wesley Clark,[1] in support of the motion. (Doc. No. 60.) Clark states that his "fee structure varies from case to case" and that, while he "charge[s] $350.00 per hour as [his] standard 'out of pocket' rate," he has also "regularly" received contingency fees that amounted to the equivalent of more than $500/hour. (*Id.* ¶ 6.) Clark also states that he is "uniquely qualified among Tennessee lawyers" to handle cases involving "the specific issue of being wrongfully forced to remain on the Tennessee Sex Offender Registry despite explicit promises by a prosecutor to the contrary," having successfully represented another client raising similar complaints at length in Tennessee state courts. (*Id.* ¶ 8; citing *Foley v. State*, No. M2015-00311-CCA-R3-PC, 2016 WL 245857 (Tenn. Crim App.); *Foley v. State*, No. M2016-02456-CCA-R3-PC, 2017 WL 5054571, at *3 (Tenn. Crim. App. Nov. 1, 2017); *Foley v. State*, No. M201801963CCAR3PC, 2020 WL 957660, at *1 (Tenn. Crim. App. Feb. 27, 2020).) Clark notes that a $450/hour rate is consistent with the rates relied upon by the court in *Doe #1 & Doe #2 v. William B. Lee, et al.*, Case No. 3:16-cv-02862, another registry case.[2]

---

[1] Clark states that he was assisted by another attorney, Frank R. Brazil, but it does not appear that Santini is requesting any fees for time worked by Brazil. (Doc. No. 60 ¶ 4.)

[2] Indeed, one of the attorneys in that case claimed and was granted fees based on rates in significant excess of $450/hour, although other attorneys in the case billed lower rates. (*See* Case No. 3:16-cv-02862, Doc. No. 128-1 at 8; Doc. Nos. 138–39.)

## II. LEGAL STANDARD

### A. Entitlement to and Scope of Fees

"Our legal system generally requires each party to bear his own litigation expenses, including attorney's fees, regardless whether he wins or loses." *Fox v. Vice*, 563 U.S. 826, 832, (2011). Thus, unless there is a contract between the parties to the contrary, courts typically do not award "fees to a prevailing party absent explicit statutory authority." *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 602 (2001) (citation omitted). In 42 U.S.C. § 1988(b), Congress "explicitly empowered the courts to grant fees to parties who win § 1983 actions." *McQueary v. Conway*, 614 F.3d 591, 603 (6th Cir. 2010). Under § 1988(b), the "prevailing party" in an action to enforce a federal right under § 1983 "may recover 'a reasonable attorney's fee as part of the costs' of litigation." *Green Party of Tenn. v. Hargett*, 767 F.3d 533, 552 (6th Cir. 2014) (quoting *Hescott v. City of Saginaw*, 757 F.3d 518, 523 (6th Cir. 2014)).

A plaintiff need not succeed on every claim in order to recover attorney's fees. Success on a single claim is sufficient to render it a prevailing party. *McQueary*, 614 F.3d at 603. However, if a plaintiff's unmeritorious claims are "based on different facts and different legal theories" than his meritorious claims, then the court must treat them "'as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim[s].'" *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)). On the other hand, if both the meritorious and unmeritorious claims "arise out of a common core of facts . . . and involve related legal theories," a court should not exempt from its fee award the hours spent on the claims that did not succeed. *Id.* at 789. Instead, the court should consider "the degree of success obtained." *Id.* (quoting *Hensley*, 461 U.S. at 436). An attorney who achieves "excellent results" is entitled to a full fee, regardless of whether his

client succeeded on every related claim raised. *Waldo v. Consumers Energy, Co.*, 726 F.3d 802, 822 (6th Cir. 2013). However, when the plaintiff's success is "limited," the court may "exercise [its] equitable discretion . . . to arrive at a reasonable fee award." *Tex. State Teachers Ass'n*, 489 U.S. at 789.

**B. Fee Amount**

The Supreme Court has cautioned that a request for attorney's fees "should not result in a second major litigation." *Hensley*, 461 U.S. at 437. Therefore, "trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox*, 563 U.S. at 838 (citation omitted). Nevertheless, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. This two-step calculation, known as the lodestar amount, provides an "initial estimate of the value of a lawyer's services." *Id.* However, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry." *Id.* at 434. After determining the lodestar amount, the court may adjust the fee upward or downward "to reflect relevant considerations peculiar to the subject litigation." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (citing *Reed v. Rhodes*, 179 F.3d 453, 471–72 (6th Cir. 1999)).

Courts have identified a number of issues, generally referred to as the "*Johnson* factors," that a court should look to when considering whether to depart from a lodestar calculation. *See Reed*, 179 F.3d at 471 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)). Those factors are: (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6)

whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 471 n.3. The Sixth Circuit has recognized that these factors may be blended into the initial fee calculation or, in the alternative, may be applied supplementally as a form of fee enhancement. *Paschal v. Flagstar Bank*, 297 F.3d 431, 435 (6th Cir. 2002) (citing *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Loc. 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n.3 (6th Cir. 1984)).

## II. ANALYSIS

The Director does not dispute Santini's entitlement to fees, take issue with the hours claimed by Clark, or argue that Clark's documentation of his work is insufficient. Rather, the Director argues that the court should calculate Santini's fees based on the $350/hour rate that Clark identified as what he usually charges his by-the-hour clients. The Director's objection has some force. To be fair, it would be overstating matters to say that $350/hour is Clark's standard rate, given that, as he has stated, he uses different payment structures for different cases, some of which result in payments that significantly exceed what a $350 hourly rate would provide. Nevertheless, an attorney's usual rate in the cases in which he *does* charge by the hour is still usually the best place to start for a lodestar calculation. Santini therefore must establish some reason for allowing a recovery in excess of what that usual rate would call for. For the reasons set out below, the court finds that he has.

First, as the court emphasized in its opinion, this was a genuinely strange, if not completely unique, case. While there is currently a great deal of sexual offender registry-related litigation

6

Case 3:20-cv-00661   Document 67   Filed 11/21/22   Page 6 of 8 PageID #: 704

going on in Tennessee, most of it involves a few recurring questions, particularly involving the Ex Post Facto Clause and a few additional alleged constitutional infirmities of particular registry-related provisions. This case, though, involved not only the unique nature of the registry itself, but also two additional, genuinely challenging areas of the law: (1) the often-confusing caselaw surrounding broken plea agreements; and (2) the arguably even more confusing issues raised by judicial diversion pleas—essentially, non-convictions that the justice system nevertheless sometimes treats like convictions for some purposes. As the Director points out, this combination of issues was so unique to Santini that Clark's prior work regarding broken plea agreements might not necessarily qualify as direct expertise. That said, Clark has provided convincing evidence that he has an unusual amount of directly relevant, albeit not identical, experience.

Second, , representing registered sexual offenders in their attempts to be removed from the registry carries obvious reputational risks that many attorneys would be unwilling to take. Such representation, though, is necessary to vindicate the guarantees of our constitutional system. Indeed, much of the litigation surrounding the registry has focused on the way that the harsh, cumulative restrictions associated with the registry force individuals to live precarious lives as members of a permanent, severely restricted underclass barred from many ordinary aspects of life. Whatever the legality of such a policy, it is imperative that the individuals subjected to it at least retain the bare ability to come to court and seek an adjudication of their rights. As necessary as that function is, it does not negate the stigma likely associated with such representation. It is understandable that an attorney would receive additional pay for putting his own standing in the community on the line in order to provide a last line of defense for one of society's most scorned and vulnerable populations—which the *Johnson* factors expressly recognize. *See Reed*, 179 F.3d at 471 n.3.

Third, the actual hours that Clark has claimed—94.1—are not particularly high, when one considers that they capture the complete litigation of a case from its inception to the client's receiving a final judgment and the full relief requested. "The essential goal in shifting fees is to do rough justice, not to achieve auditing perfection." *Fox*, 563 U.S. at 838. The ultimate issue, therefore, is whether the total fee request is reasonable, not merely the rate. Clark's total hours worked were decidedly reasonable, and the claim on which he did succeed was sufficient to obtain the full relief Santini sought—relief that may well have an extraordinarily positive effect on Santini for the rest of his life. Indeed, the hours are low enough—and the degree of success high enough—that the court finds that, insofar as the Director's objection about the rate has some force, the final lodestar amount (as corrected to reflect the math) is still a reasonable fee. The court accordingly will grant Santini's motion in full.

## V. CONCLUSION

For the foregoing reasons, Santini's Motion for Attorney's Fees, Costs, and Litigation Expenses (Doc. No. 59) is hereby **GRANTED** as modified by the court and the Director is **ORDERED** to pay Santini $42,345.00 in fees and $767.90 in other expenses.

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge